IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Cheryl Worden, <br><br> Plaintiff, <br><br> v. <br><br> FCA US LLC, <br><br> Defendant. | Case No. 3:18-cv-50413 <br><br> Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

What is commonly referred to as "the Chrysler Belvidere Plant" assembles Jeep Cherokees.[1] It's a union shop. A high-ranking union representative's daughter worked at the facility. When questioned and confronted about her alleged misconduct by management, the daughter responded with impolite verbiage. She was fired.

Two people were involved in the daughter's termination: (1) Plaintiff Cheryl Worden, the Labor Relations Supervisor, and (2) one of her subordinates, Matt Rainey, a Labor Relations Representative. According to Rainey, Worden made the decision to terminate and directed him to fire the daughter. Apparently, Rainey was unsure if the daughter's offense was sufficient cause for discharge.

In violation of the well-known work rule of "don't-let-your-boss-be-surprised," Worden's boss—Brad Rauchfuss, the Human Resources Manager—was left in the dark about the termination of the daughter of a high-ranking member of the United

---

[1] Legally, the facility is operated by Defendant FCA US LLC ("FCA").

1

Auto Workers (UAW) union. Rauchfuss was not pleased. Disappointed and frustrated, Rauchfuss asked to see the underlying documents supporting the discharge. He also emailed Worden and Rainey, essentially questioning whether just cause existed for the termination.

Late on a workday, Worden told Rainey a written summary on the termination was needed. Worden said she created a document but that Rainey needed to edit, supplement, and finish the document with all the "i"s dotted and "t"s crossed. The summary was needed pronto. Worden then left. Later, Rainey checked the computer system and discovered a summary. It is undisputed that this summary was authored by Worden, not Rainey. But the summary Worden created identified Rainey as the author and submitter. Rainey was shocked, showing the summary to a colleague to act as a prover that he did not write the summary. The colleague corroborated these facts. The other Labor Relations Representative likewise corroborated Rainey in this regard. Again, these facts are undisputed: Worden, not Rainey, wrote the summary, and Worden indicated on the summary that Rainey was the author.

Thereafter, a rattled Rainey left for the day but freaked out on the drive home. He called Rauchfuss and left a message and then texted Rauchfuss, summarizing the events. Rauchfuss responded that he'd talk to Rainey the next morning.

The next morning, Rauchfuss spoke with Rainey, who confirmed and reiterated that he did not write the summary despite his name being on the

document. Rauchfuss then spoke with Worden about the summary. Worden said the summary was a draft. Critically, during the conversation, Worden admitted that she wrote the document herself and that it identified Rainey as the author. Dkt. 50-1, at 26-27. Rauchfuss said this was a "huge problem" and told Worden she had falsified a document. Rauchfuss asked Worden for her badge and suspended her. She was later terminated.

The decision to terminate Worden was made, in part, by Meredith Hall—FCA's Human Resources Business Partner from Michigan, who was brought in on this matter. Although Hall was involved in Worden's termination, Hall had not been involved in other disciplinary determinations at the Chrysler Belvidere plant. Like Rauchfuss, Hall determined that Worden falsified the document.

Under FCA's narrative, Worden was fired for creating a document summarizing the controversial termination of the daughter of a high-ranking member of the UAW but attributing the author as Rainey; what FCA viewed as falsifying a document. Under Worden's narrative she was terminated on the basis of sex and because of her age and that FCA's narrative was a pretext. According to Worden, FCA treated other male employees and other employees under forty years of age better than her.

Regardless of the competing narratives, the precise issued presented to the Court is whether sufficient evidence supporting all the elements of Worden's claims exist, so that the case must be resolved by a jury. There is not. Worden cannot establish a prima facie case because she cannot show similarly situated persons

outside of her classes were treated better. And even assuming Worden met that burden, Worden has failed to establish a genuine issue of material fact that FCA's legitimate non-discriminatory reason for termination was a pretext.

The filings on summary judgment present a bevy of facts, many of which are not material to the Court's opinion. The Court need not recite them here. At bottom, the *McDonnell Douglas* framework requires that Worden point to substantially similar persons outside of her protected class that have been treated differently. She has failed to do so. Rather than respond to that argument in detail, she focused her argument on the veracity of the assertions underlying her termination and the culture that purportedly exists at FCA's facility. But these assertions do not change the Court's opinion. FCA is entitled to judgment as a matter of law.

First, the Court grants FCA's motion for summary judgment as to Count I of Worden's complaint. That claim asserts a hostile work environment. FCA contends that Worden indicated at the Court's prefiling conference that she no longer wishes to pursue that claim. Regardless, Worden failed to response to FCA's motion for summary judgment on Count I. That failure acts as a waiver of the claim. *Ennin v. CNH Indus. Am., LLC*, 878 F.3d 590, 595 (7th Cir. 2017).

Second, the Court grants FCA's motion for summary judgment as to both Count II and Count III. In Count II, Worden claims sex discrimination. Dkt. 4, ¶¶ 22–39. In Count III, Worden claims age discrimination. *Id.* ¶¶ 40–47. The *McDonnell Douglas* framework offers "a formal way of analyzing" a case alleging

4

discrimination.[2] *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 500 (7th Cir. 2017) (quoting *Smith v. Chicago Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015)). Under that framework, the plaintiff must first show (1) that she is a member of a protected class; (2) that she performed her job to her employer's expectations; (3) that she suffered an adverse employment action; and (4) that one or more similarly situated persons outside her protected class received better treatment. *Id.*

If the plaintiff cannot meet that burden, then the inquiry can end. On the other hand, if the plaintiff meets this burden, the employer must show a legitimate and nondiscriminatory reason for its actions. *Id.* If the employer can do that, then "the burden shifts back to the plaintiff to produce evidence establishing a genuine dispute of fact about whether the employer's reason was a pretext for discrimination." *Id.*

The Seventh Circuit has made clear that such similarly situated persons must be "directly comparable to the plaintiff in all material respects, which is a common-sense, flexible analysis of relevant factors." *Hnin v. TOA (USA), LLC*, 751 F.3d 499, 504 (7th Cir. 2014). These factors include whether the putative comparators reported to the same supervisor, "were subject to the same

---

[2] Although *McDonnell Douglas* offers a formal way of analyzing these cases, the Court's fundamental task on summary judgment for any employment discrimination claim is to determine "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The Seventh Circuit has disavowed any distinction between a direct and indirect claim of discrimination. All the evidence is considered in all claims. *Id.* at 766.

employment standards, and engaged in similar conduct." *Id.* (quoting *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 538 (7th Cir. 2013)). Thus, Worden cannot point to individuals that are merely similarly situated; she must point to individuals outside of her protected class that were "substantially similar" such that the similarities and disparate treatment, "in the absence of some other explanation," raises an inference of unlawful discrimination. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 730 (7th Cir. 2011).

Here, Worden cannot meet her burden of showing that one or more similarly situated persons outside her protected class received better treatment.[3] Two independent reasons support the Court's holding. First, in her brief responding to FCA's motion for summary judgment, Worden fails to make any significant argument that sufficient comparators exist. She mentions no names. She mentions no details. Instead, she leaves for the Court and FCA the task of analyzing her Local Rule 56.1 statements to find comparators. That is not the Court's job. *Hildreth v. Butler*, 960 F.3d 420, 429 (7th Cir. 2020) (noting that "it is not the court's job to 'scour the record in search of evidence to defeat a motion for summary judgment'") (quoting *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008)); *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 572 (7th Cir. 2017).

Second, no evidence indicates that the individuals Worden does reference in her LR 56.1 statements of fact are similarly situated in all material respects. She

---

[3] FCA also challenges whether Worden can meet her burden as to the second element, that she performed her job to her employer's expectations. But the Court does not consider that argument, as it is not necessary to the resolution of the pending motion.

identifies six male individuals employed by FCA—Jeremy Bahr, Wes Gamble, Biko Burrell, Steve Leathers, Mike Alt, and James Davis. Dkt. 54, ¶¶ 88–93. Notably, Hall—who agreed with Rauchfuss that Worden falsified a document and who was involved in the decision to terminate—was not involved in the discipline of any of these comparators. Dkt. 45-9. Alone, that fact eliminates each of these individuals as being "similarly situated." *See Ellis v. United Parcel Service, Inc.*, 523 F.3d 823, 826 (7th Cir. 2008). But for the sake of completeness, the Court addresses each of these individuals.

Bahr was accused of threatening, intimidating, harassing, coercing, and using abusive language. Dkt. 50, ¶ 41. Even if Bahr reported to the same supervisor—which Worden does not argue—and even if the conduct was similar—it is not—Worden admitted that she "did not know who made the decision as to what discipline, if any, to impose on Bahr." *Id.* Thus, Worden has not presented any evidence sufficient to establish that Bahr is similarly situated in all material respects.

Worden next mentions Wes Gamble. Dkt. 54, ¶ 90. He was "a business unit leader in the north body shop supervised by the center manager." Dkt. 50, ¶ 57. On multiple occasions, he was accused of, and investigated for, sexual harassment. Dkt. 54, ¶ 89. Though the statements of fact give no indication of whether all of those accusations were substantiated or whether they all resulted in discipline, the undisputed evidence shows that FCA terminated Gamble in 2017 following another such allegation. Dkt. 50, ¶ 59. Furthermore, Worden's boss—Brad Rauchfuss—was

7

involved in the decision to terminate Gamble. *Id*. Given these facts, Gamble was also not similarly situated in all material respects. He worked in a different department, for a different supervisor, and committed a different infraction. Instead, the primary similarity is that both he and Worden were terminated.

Worden next identifies Biko Burrell. He was accused of sexual harassment, sleeping on the job, and of getting into "a physical altercation with a union representative." Dkt. 50, ¶ 44. Though Worden is unaware of who made the disciplinary decision in his case, she admits that Burrell was terminated. Furthermore, Burrell reported to a different supervisor—Brandon Russell. Thus, like the first two, Worden has not shown Burrell to be similarly situated in all material respects.

Worden also points to Steve Leathers. Dkt. 54, ¶ 91. He was given a verbal warning for sending one inappropriate email to a female supervisor. Dkt. 50, ¶ 64. Worden has not pointed to any additional evidence to show how Leathers is similarly situated in all material respects. Still, sending an inappropriate email is not a similar offense to falsifying a document. To be sure, Worden disputes whether she did in fact falsify any document, but the truth of the accusation is not at issue. What matters is that those offenses are not similar.

Worden next mentions Mike Alt. Dkt. 54, ¶ 92. He was the subject of an ethics hotline call, but Worden in her deposition could not remember the nature of that complaint. Dkt. 50, ¶ 56. Still, Worden in her Local Rule 56.1 statement explains that he was "charged with harassment and creating a hostile working

environment when he engaged in a heated exchange" with James Davis. Dkt. 54, ¶ 92. She further notes that he was not disciplined and that "he was coached by Kelly Pollard." *Id.* FCA asserts that this information is hearsay and lacks foundation. *Id.* No matter. Even if the evidence was admissible, it does not come close to establishing that Alt was similarly situated in all material respects. The evidence fails to establish who made the disciplinary decision or who his supervisor was. Furthermore, the infractions attributed to Alt are not remotely similar to the falsification of a document.

Lastly, Worden suggests James Davis—the same James Davis who got into an altercation with Mike Alt. Dkt. 54, ¶ 93. He was a "production supervisor in the trim and paint departments" and was accused of harassment and retaliation. Dkt. 50, ¶ 49. Nothing in the fact statements indicates who his supervisor was, but he worked in a different department than Worden and was accused of materially different infractions. Furthermore, Worden investigated Davis—a month after his altercation with Mike Alt—for having sex at work with another employee. Worden suspended him for his actions. On Worden's recommendation, Davis was terminated. *Id.* ¶ 52. Thus, Worden has not presented evidence sufficient to establish that Davis was similarly situated in all material respects. Here again, the starkest similarity is that both were terminated.

Thus, Worden has not presented admissible evidence sufficient to meet her initial burden under the *McDonnell Douglas* burden-shifting framework. Because she has not met that initial burden, the inquiry can stop there. The Court,

nevertheless, briefly notes that Worden has simply presented no genuine issue of material fact requiring that the issue of pretext must be resolved by a jury. A prime example of this involves causation. Hall, one of the decision makers, did not know Worden's age. The only evidence Worden uses to counter this is that Hall once met Worden. That is not a genuine dispute. (It is not as though Hall met Worden at Worden's fortieth birthday party.) At a trial, the Court would be compelled to grant a motion for judgment as a matter of law under Rule 50. Fed. R. Civ. P. 50(a).

FCA's motion for summary judgment [44] is granted. Civil case terminated.

Date: June 10, 2021

_____
Honorable Iain D. Johnston
United States District Judge
Northern District of Illinois
Western Division